IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JONATHAN AND JACQUELINE HINKER,<br><br>            Plaintiffs,<br><br>        v.<br><br>COUNTY OF CAPE MAY, et al.,<br><br>            Defendants. | Civil No. 18-12918-RBK-KMW<br><br>**OPINION** |

**APPEARANCES:**

GEORGE J. SINGLEY, ESQUIRE
SINGLEY & GINDELE ATTORNEYS AT LAW LLC
200 HADDONFIELD BERLIN ROAD SUITE 400
GIBBSBORO, NJ 08026

    *Attorneys for Plaintiffs Jonathan and Jacqueline Hinker*

RUSSELL L. LICHTENSTEIN, ESQUIRE
COOPER LEVENSON, P.A.
1125 ATLANTIC AVENUE 3RD FLOOR
ATLANTIC CITY, NJ 08401

    *Attorneys for Defendants County of Cape May and Cape May*
    *County Sheriff's Department*

**WILLIAMS, United States Magistrate Judge**

    This matter having come before the Court upon the Motion

[Docket Number 15] by Plaintiffs, Jonathan and Jacqueline Hinker,

for an Order disqualifying the law firm of Cooper Levinson, P.A.

("Cooper Levenson") from representing Defendants, County of Cape

May and Cape May County Sheriff's Department, in this matter. The Court notes that Defendants oppose the Motion. The Court has reviewed the parties' submissions and held a hearing on December 11, 2019, and, for the reasons that follow, Plaintiffs' Motion is **DENIED**.

## I.    BACKGROUND

The following facts are established based upon the record presented, particularly, from the certifications and exhibits submitted to the Court in support of the current Motion and in opposition thereto. The Court limits its discussion and analysis to only those facts that bear upon Derek G. Timms, Esquire's representation of Plaintiffs and his relationship with Cooper Levenson. However, given the gravity of the matter and the importance of Timms's expansive email communications with Cooper Levenson, this Order must precisely capture Timms's relationship with Cooper Levenson.

Plaintiffs filed the underlying Complaint on August 17, 2018. Complaint [Dkt. No. 1]. Plaintiffs are represented by the law firm Singley & Gindele Attorneys at Law, L.L.C. ("Singley & Gindele"). The Docket lists Matthew J. Gindele, Esquire and Derek G. Timms,

Esquire[1] as counsel of record for Plaintiffs.[2] According to Singley, "Derek Timms, Esquire was assigned primarily [sic] responsibility for the prosecution of Plaintiffs' claims." Certification of George J. Singley, Esquire ("Singley Cert.") [Dkt. No. 15-2], at 2, ¶6. Defendants are represented by Cooper Levenson, and Russel L. Lichtenstein, Esquire is listed as counsel of record.

### A.   Timms's Communications and Interactions with Cooper Levenson

In or before May 2019, Cooper Levenson placed an advertisement seeking to fill a position in the firm's Negligence Defense Department. Certification of Kenneth J. Calemmo, Jr. ("Calemmo Cert.") [Dkt. No. 18-3], at 1, ¶2. That department is chaired by Carmelo Torraca, Esquire. *Id.* Timms learned of this opening and emailed Torraca on May 8, 2019. Timms email dated Wednesday, May

_____

[1] Timms is misspelled on the Docket as Derrick G. Timms and is incorrectly listed as an attorney with Cooper Levenson. It is unclear why and/or how these blatant errors occurred. It is also unclear why neither Timms nor Gindele has failed to enter a notice of Timms's withdrawal of appearance.

[2] Timms joined Singley & Gindele as an associate attorney in March 2018. Singley Cert. [Dkt. No. 15-2], at 2, ¶6. Timms previously worked as an associate attorney at various other law firms, including as an associate attorney at Cooper Levenson's Insurance Defense Department from December 1, 2008 until February 28, 2014. Certification of Kenneth J. Calemmo, Jr. [Dkt. No. 18-3], at 2, ¶5; Brief in Opposition ("Opp. Br.") [Dkt. No. 18], at 1. This prior employment sheds light on his familiarity with attorneys at Cooper Levenson but is otherwise not implicated or relevant to the instant Motion.

8, 2019, at 1:12 P.M. [Dkt. No. 15-2], Exhibit A. Timms's email describes his various frustrations with Singley & Gindele and his overall interest in seeking "a little more stability" at Cooper Levenson. *Id.* On Friday, May 10, 2019, Torraca responded with an encouraging email that Timms would be a good fit and advised Timms to call to "get this started!!!" Torraca email dated May 10, 2019, at 9:12 A.M. [Dkt. No. 15-2], Exhibit B (emphasis in original).

On Monday, May 13, 2019, at 9:59 A.M., Timms emailed Cooper Levenson's Chief Operating Officer, Kenneth J. Calemmo, Jr.,[3] expressing his interest in the firm and the kind of work he hoped to develop. Timms email dated May 13, 2019, at 9:59 A.M. [Dkt. No. 15-2], Exhibit C. Calemmo responded at 1:32 P.M. and set a morning meeting for Wednesday, May 15, 2019. Timms and Calemmo email chain dated May 13, 2019, at 1:19 P.M. and 1:32 P.M. [Dkt. No. 15-2], Exhibit D.

Calemmo interviewed Timms on Wednesday, May 15, 2019. Calemmo Cert. [Dkt. No. 18-3], at 2, ¶¶3-6. Calemmo certifies that:

> During my interview with Mr. Timms, he indicated that he had "a case with Russell" who I understood to be the firm's partner Russell L. Lichtenstein, Esquire. Mr. Timms did not advise me what the case was or who our client was during the meeting. I asked Mr. Timms if he would be leaving that file with his previous firm and he indicated he would.

---

[3] Calemmo is not an attorney.

> At that time, I did not have any further
> conversations with Mr. Timms or anyone at
> Cooper Levenson concerning this issue. Mr.
> Timms did not indicate to me that there was a
> second matter in which he represented a client
> adverse to a firm client. The second matter
> was being handled by partner Steven D.
> Scherzer, Esquire.

Calemmo Cert. [Dkt. No. 18-3], at 2, ¶7. Later that same day, at

12:43 P.M., Timms emailed a thank you note to Calemmo. Timms email

dated May 15, 2019, at 12:43 P.M. [Dkt. No. 15-2], Exhibit E.

Calemmo replied at 1:16 P.M., stating "everyone is on board and we

would like to move forward. I will get you over a[n] [sic] offer

letter before the end of the day. Let us know of your acceptance

[and] [sic] your start date. Also[,] I am assuming that you will

be primarily working here in AC. Welcome Aboard[.]" Calemmo email

dated May 15, 2019, at 1:16 P.M. [Dkt. No. 15-2], Exhibit F.

At 1:23 P.M., Timms responded enthusiastically to the

informal offer. Timms email dated May 15, 2019, at 1:23 P.M. [Dkt.

No. 15-2], Exhibit G. Timms requested a start date of June 1 or

June 3 and stated he would "start this week to discuss the move

with my clients to make the transition a smooth one." *Id*. At 1:47

P.M., Calemmo emailed Timms the formal offer letter. Offer Letter

and Calemmo email dated May 15, 2019, at 1:47 P.M. [Dkt. No. 15-

2], Exhibit H. At 2:48 P.M., Timms replied, accepting the offer,

and requested a June 3, 2019 start date. Timms email dated May 15,

2019, at 2:48 P.M. [Dkt. No. 15-2], Exhibit I. Timms's acceptance email again emphasized that he would begin "reaching out to my various clients to insure a smooth transition to Cooper." *Id.*

On Thursday, May 16, 2019, Calemmo circulated an internal email among Cooper Levenson's partners and senior management advising them that Timms was joining the firm. Calemmo Cert. [Dkt. No. 18-2], at 2, ¶9. That same day, Scherzer informed Calemmo that Timms presented a conflict, *id.* at 2, ¶10, and, either that evening, or the morning of Friday, May 17, 2019, Lichtenstein called Calemmo "indicating that there was a non-waivable conflict with respect to Mr. Timms and that the firm would need to promptly withdraw any offer of employment." Certification of Russell L. Lichtenstein, Esquire ("Lichtenstein Cert.") [Dkt. No. 18-2], at 1-2, ¶4. Lichtenstein certifies that he had a "second conversation with Mr. Calemmo on Friday, May 17, 2019 along the same lines. I once again specifically instructed Mr. Calemmo to withdraw any offer of employment that had been made at that time." *Id.* at 2, ¶5. Calemmo also certifies that Lichtenstein expressed these concerns and instructions. Calemmo Cert. [Dkt. No. 18-3], at 2, ¶¶10-11.

On Monday, May 20, 2019, Calemmo contacted Timms and "advised him that as a result of the firm's assessment of the conflicts

that would be created if he were to join the firm, Cooper Levenson was withdrawing the offer of employment." *Id.* at 3, ¶12.

In response, Timms relentlessly attempted to overcome the withdrawal. Timms sent numerous emails to Calemmo, Torraca, Lichtenstein, and Lloyd D. Levenson,[4] each time emphasizing his frustrations with the situation and ultimate desire to join Cooper Levenson per the terms of the offer. Throughout these emails, Timms mentioned the Hinker case, stating:

- Timms to Torraca:

  I am freaking out and now may be without a job very soon. Russell told me that the cases were "big" cases and Cooper would [not] [sic][5] step away from them. That bothers me because **one is a BS case where a combat vet (my client) sued Cape May County** for kicking his service dog out of a park. **It isn't worth shit**.

  . . .

  I cannot believe that Cooper may end up screwing my career up and leaving me without a job to keep **one case that is a nothing case** and one where I did not even sue Cooper's client.

  Timms email dated May 20, 2019, at 1:01 P.M. [Dkt. No. 15-2], Exhibit J (emphasis added).

---

[4] Levenson is the Chief Executive Officer of Cooper Levenson.
[5] As noted in Singley's certification, "[a] fair reading of this sentence suggests a likely typographical error inasmuch as it appears that "Russell" would not agree to step away." The Court agrees, based on the various emails presented in the record, Lichtenstein would not agree to "punt" the case and Cape May County as a client.

- Timms to Calemmo:

  [T]his whole situation has placed me in a very difficult position. I know you have been very supportive and helpful and I appreciate that. I will be honest, however, that it is frustrating that essentially **two minor cases are keeping me in limbo**.

  Timms email dated May 22, 2019, at 2:07 P.M. [Dkt. No. 15-2], Exhibit K (emphasis added).

- Timms to Torraca:

  I'm glad [Calemmo] is still on this. No explanation, though, about why Russell's got him by the balls and is opening Cooper up to a big problem for **a shit case**.

  Timms email dated May 22, 2019, at 2:51 P.M. [Dkt. No. 15-2], Exhibit L (emphasis added).

- Timms to Levenson:

  [Calemmo] called me and told me that there was a problem. Essentially, Cooper would need to "punt" any case where I was on [t]he [sic] other side. That would mean Russell would have to transfer his file so that there would be no conflict. **I am fully familiar with the case and candidly I[t] [sic] is not a huge matter**.

  Timms email dated May 24, 2019, at 1:20 P.M. [Dkt. No. 15-2], Exhibit M (emphasis added).

- Timms to Calemmo:

  Obviously, the easiest outcome is for Russell to "punt" his case. I understand his hesitancy, but in light of the fact that Jeff Lindsay is County Counsel, I don't think it will harm that relationship. **Hell, he has already had a good deal of time billing the file and it will likely only require a Summary Judgement Motion**.

  Timms emailed dated May 24, 2019, at 3:19 P.M. [Dkt.

No. 15-2], Exhibit N (emphasis added).

- Timms to Lichtenstein:

  I would like to speak with you if possible. **I understand your position of not wanting to "punt" the Hinker case**, <u>**but the ramifications for me are essentially life changing**</u>.[6]

  Timms email dated May 29, 2019, at 8:57 P.M. [Dkt. No. 15-2], Exhibit O (emphasis added).

---

[6] Timms and Lichtenstein never spoke by telephone, however, Lichtenstein replied to the email, stating:

[Y]ou need to understand my perspective and position on this. While I am sensitive to the impact our decision has on you individually, my obligation, as a senior partner and member of the firm's management committee, is to make certain that the decisions we make are (1) made with the best interests of the firm as a foundation and (2) are made consistent with our obligations under the RPC's and ethics rules.

You were clearly aware that there was an actual conflict with you joining Cooper Levenson. Further, you should have been aware that conflicts involving public entities (like Cape May County) are never waivable. While I understand that you brought your direct involvement in the on going [sic] Hinker matter to Ken's (a non-lawyer) attention, I would have hoped that you, as a lawyer, would have taken a look at the issue yourself.

Once your decision to come here was announced internally by email, immediate issues were raised concerning the conflict and ethical situation created by your involvement in both my matter and another matter. Our internal ethics guidance was that your representation of the plaintiff in [the] [sic] Hinker matter created an unwaivable conflict. The suggestion that we abandon our representation of a long-standing institutional public entity client in order [to] [sic] address the conflict issue is and was an unacceptable response from our perspective.

Lichtenstein email dated May 30, 2019, at 10:51 A.M. [Dkt. No. 15-2], Exhibit P.

In addition to these comments, Timms also repeatedly emphasized that he advised Singley & Gindele of his plans to leave and would thus be without a job effective June 3, 2019 and left with no way to support his family. *E.g.,* Calemmo Cert. [Dkt. No. 18-3], at 3, ¶14; Timms email dated May 20, 2019, at 1:01 P.M. [Dkt. No. 15-2], Exhibit J; Timms email dated May 22, 2019, at 2:07 P.M. [Dkt. No. 15-2], Exhibit K; Timms email dated May 24, 2019, at 1:20 P.M. [Dkt. No. 15-2], Exhibit M; Timms emailed dated May 24, 2019, at 3:19 P.M. [Dkt. No. 15-2], Exhibit N; Timms email dated May 29, 2019, at 8:57 P.M. [Dkt. No. 15-2], Exhibit O; Timms email dated May 30, 2019, at 2:16 P.M. [Dkt. No. 15-2], Exhibit Q; and Timms email dated May 30, 2019, at 4:30 P.M. [Dkt. No. 15-2], Exhibit Q. Timms also implied that Cooper Levenson was somehow responsible to provide him with financial support if he was unable to secure a comparable offer. *See, e.g.,* Timms emailed dated May 24, 2019, at 3:19 P.M. [Dkt. No. 15-2], Exhibit N; Timms email dated May 30, 2019, at 2:16 P.M. [Dkt. No. 15-2], Exhibit Q; Timms email dated May 30, 2019, at 4:30 P.M. [Dkt. No. 15-2], Exhibit Q.

**B.   Timms's Interactions and Lack of Candor with the Hinkers and Singley & Gindele**

In stark contrast to Timms's numerous representations and frequent communications with Cooper Levenson, Timms left the Hinkers and Singley & Gindele completely in the dark. Singley Cert.

[Dkt. No. 15-2], at 2, ¶7. Singley certifies that Singley & Gindele

had no knowledge of Timms's interactions with Cooper Levenson. *Id.*

Specifically, Singley certifies:

> [O]n June 11, 2019, Mr. Timms suddenly and
> without any prior warning announced that he
> was leaving our firm. We were surprised by
> this announcement so I immediately wrote to
> Mr. Timms asking for his assistance in making
> the transition. Mr. Timms made it clear that
> his decision was effective immediately and he
> would not afford us any time for us to find a
> replacement or to appreciate the status of the
> cases he handled. Clearly, our firm faced an
> emergency. We had physical and electronic
> files for all of our clients but Mr. Timms'
> decision to leave so abruptly denied us of the
> details and "feel" for the cases he was
> handling for us.

*Id.* at 2-3, ¶7. Singley further certifies that, despite begging

Timms for details on his files, Timms's "delayed and halfhearted"

response forced Singley to "enter the names of each of our clients

and adversaries trying to appreciate email exchanges and documents

saved on our computer system" and Timms's former work computer.

*Id.* at 3, ¶8. It was from these efforts that Singley discovered

that "[i]n the midst of litigation . . . Timms applied for and was

[offered] employment by his adversary." *Id.* at 3, ¶10. Moreover,

Singley learned that Timms's "incredible betrayal" and "ultimate

goal" of returning to Cooper was concurrent with Timms's

representation of Singley & Gindele's clients, including meeting

with the Hinkers "and even discuss[ing] settlement with them." Singley Cert. [Dkt. No. 15-2], at 2-8, ¶¶9-30.

On June 21, 2019, Singley submitted a letter alerting the Court to Timms's inappropriate communications with Cooper Levenson. Singley Letter [Dkt. No. 11]. Singley's letter set forth, in pertinent part:

> Let me be quick to acknowledge that we are not and cannot at this time offer any criticisms of our immediate adversary in this matter, Russell L. Lichtenstein, Esq. I also acknowledge that the discovery of the conflict by the Cooper Levenson firm may have been entirely innocent and without fault. However, we are most troubled by the failure of our adversaries to disclose Mr. Timms' efforts to gain employment with opposing counsel in the midst of this litigation and the extent of Mr. Timms' disclosures. We also believe it important to understand the origins of this situation, the extent of Mr. Timms' disclosures and editorial comments concerning this case and the possible dissemination of that information within the Cooper Levenson firm.

*Id.* Singley also contacted Plaintiffs. Singley Cert. [Dkt. No. 15-2], at 3-9, ¶¶10-30. Singley certifies that:

> The Hinkers' reaction was as expected. They trusted Mr. Timms and believed in him. They provided him with an enormous amount of confidential information and discussed everything from the cause of action to their position on a fair settlement. They now believe that Mr. Timms betrayed them.

*Id.* at 8, ¶30.

Shortly thereafter, on June 28, 2019, the Court granted Plaintiffs leave to file the instant Motion. June 28, 2019 Scheduling Order [Dkt. No. 14].

## C. __Certifications from the Parties__

In addition to the foregoing, the parties also filed certifications, which reveal the following:

- Singley certifies that: (1) Timms lied to Singley & Gindele when asked if he was looking for work elsewhere; Singley Cert. [Dkt. No. 15-2], at 3, ¶11; and (2) "other than his failure to disclose Timms's conduct," Singley has no further evidence that Lichtenstein was involved in any unethical conduct. *Id.* at 9, ¶32.

- Lichtenstein asserts that his only interactions with Timms concerning the Hinker case are: (1) speaking with Timms prior to the Initial Scheduling Conference to prepare a discovery schedule; (2) emailing Timms to follow up on the discussions the parties had before the Court regarding settlement; and (3) speaking with Timms in advance of a status conference with the Court, wherein they discussed substantive issues related to the case. Opp. Br. [Dkt. No. 18], at 2.

- Lichtenstein further certifies that: (1) Lichtenstein never had any conversations with Timms about Timms's interest in any position at Cooper Levenson or Timms's application for any position prior to being offered the position by Calemmo; (2) Lichtenstein was unaware that Timms interviewed at Cooper Levenson until May 16, 2019; (3) Lichtenstein was unaware that Cooper Levenson had offered Timms a position until May 16, 2019 when Calemmo circulated an email among Cooper Levenson's partners; (4) Lichtenstein never had any communications with Timms in this matter where Timms engaged in conduct which Lichtenstein believed was a violation of any RPC; and (5) Lichtenstein never had any conversations with Timms in which Timms discussed any confidential client matters in

this or any other case. Lichtenstein Cert. [Dkt. No. 18-2], at 1-3, ¶¶3-14.

- Calemmo certifies that he has recently learned that Timms lied to Cooper Levenson. Calemmo Cert. [Dkt. No. 18-3], at 3, ¶16. Specifically, Calemmo learned through Singley's Certification that Timms did not advise anyone at Singley & Gindele of his departure until June 11, 2019—which is inconsistent with what Timms told Calemmo, namely, Timms repeatedly told Calemmo that he had advised Singley & Gindele that he planned to depart that firm before Cooper Levenson withdrew Timms's offer of employment. *Id.* at 3, ¶16.

- Calemmo further certifies that: (1) Timms never provided any information or details about the matter that he had adverse to Lichtenstein; and (2) Timms did not disclose any confidential information. *Id.* at 3, ¶¶16-18.

D.   **Factual Summary**

In sum, the record reveals that Timms was only ever employed at Cooper Levenson from 2008 to 2014; he has never been employed by Cooper Levenson subsequent to that time. Timms solicited and Cooper Levenson offered Timms a position as an attorney. Based on Lichtenstein and Scherzer's concerns and instructions, Cooper Levenson withdrew the offer five days after it was made. Timms interacted and corresponded extensively with Cooper Levenson's attorneys and senior management in an attempt to secure employment after the offer was rescinded. Notably, after the offer was rescinded, Timms disparaged his clients and the merits of their cases to various people at Cooper Levenson in an apparent attempt to have Cooper Levenson reinstate their offer of employment.

14

Singley & Gindele and the Hinkers were kept unaware of Timms's efforts to secure employment with Cooper Levenson. Timms met with the Hinkers and discussed settlement with the Hinkers all the while emailing Cooper Levenson schemes to resolve the conflict and/or ways he could join Cooper Levenson in spite of the conflict he presented the firm. Timms resigned from Singley & Gindele three weeks after the offer was rescinded.

## II.  DISCUSSION

The determinative issue for disqualification is whether Timms was **associated** with Cooper Levenson under Model Rules of Professional Conduct 1.9(b) and 1.10(a). Although the record demonstrates that Timms's conduct was wildly inappropriate, and he may personally face admonishment and sanctions for his conduct, this alone is insufficient grounds to disqualify Cooper Levenson. The Court thus concludes Plaintiffs have not met their burden and the Motion must be denied.

## A.  The Parties' Positions

Plaintiffs argue that Timms side switched in the midst of pending litigation, thereby creating a conflict of interest under New Jersey Rule of Professional Conduct 1.9(b). Plaintiffs' Brief [Dkt. No. 15-3], at 2. Specifically, Plaintiffs claim Timms's efforts to gain employment with his direct adversary and his

subsequent hiring by that firm are direct violations of Rule 1.9. *Id.* at 3. Similarly, Plaintiffs argue that because Timms alone had primary responsibility over this matter, neither screening nor client consent absolves this conflict. *Id.* Plaintiffs conclude that Timms was associated with Cooper Levenson and therefore Cooper Levenson must be disqualified under Rule 1.10, since no attorney may represent a client when any one attorney at that firm is prohibited from doing so under Rule 1.9. *Id.* at 3.

Although Plaintiffs acknowledge "[t]here are no guidelines or prerequisites before an attorney becomes truly 'associated' with a firm," Plaintiffs nonetheless claim the Rule is sufficiently broad to include an offer of employment. *Id.* at 4. Plaintiffs aver that Rule 1.10 does not require Timms to have actually worked at Cooper Levenson to be associated with Cooper Levenson. *Id.* ("There is no requirement that secrets be exchanged or confidences become lost or broken . . . [the Rule] should not be trivialized by the creation of additional requirements or restricted by other employment criteria").

Plaintiffs also argue that Cooper Levenson should be disqualified for failing to report Timms's unethical conduct. *Id.* Without specifying what Rules of Professional Conduct Timms allegedly violated, Plaintiffs blithely assert that he did and

Cooper Levenson in turn violated Rule 8.3 by failing to inform the "appropriate professional authorities." [7] *Id.* Specifically, Plaintiffs argue that Timms

> openly violated his Rules of Professional Conduct to senior management of Cooper Levenson. His hurtful and disparaging criticism of the Hinkers, his betrayal of their claims, his outright recommendation that Cooper Levenson file for summary judgement were made known to senior members of the firm. He betrayed the Hinkers and openly revealed his opinion of their claims. He confessed an obvious disregard of his ethical obligations and still no one said anything.

*Id.* at 4. Plaintiffs further argue that Cooper Levenson allowed Timms to continue representing the Hinkers during the application process and even after he was hired, thus "Cooper Levenson certainly knew of Mr. Timms' divided loyalty. If the Hinker case went away, his employment could survive and still, no one spoke up, no one alerted the Hinkers or our firm. Mr. Timms met with the Hinkers to discuss settlement and other matters when Mr. Timms and Cooper Levenson knew of Mr. Timms open disdain for his clients." *Id.* at 4-5. Following Plaintiffs' theory, Cooper Levenson is conflicted because the firm knew of this conflict and "chose to ignore it or to make it go away." *Id.* at 5.

---

[7] Curiously, said obligation would also extend to Plaintiffs' counsel who made no such report, as set forth on the record.

Defendants vehemently disagree with Plaintiffs'
characterizations and legal analysis. Opp. Br. [Dkt. No. 18].
Although Defendants acknowledge that an offer was made to Timms,
Cooper Levenson emphasizes that the offer was quickly withdrawn—a
full two weeks before Timms was scheduled to start. *Id.* at 3. Thus,
Timms never had access to the firm's files and computer systems,
let alone practiced at Cooper Levenson. *Id.* Defendants assert that
Timms was employed by Singley & Gindele at all times relevant, and
he ended that association on June 11, 2019, when he joined the
firm of Parker, Young & Antinoff. *Id.* at 3-4. In short, Defendants
argue Rules 1.9(b) and 1.10 are inapplicable because Timms was
never associated with Cooper Levenson after the offer was made and
rescinded. *Id.* at 3.

Defendants also take issue with Plaintiffs' alleged
mischaracterization of the record. For example, Defendants claim
that Plaintiffs' allegation of "side switching" is inapplicable,
since it refers to the situation where an attorney representing
one client in a single matter switches sides to represent an
adverse client in the same matter. *Id.* at 4. Defendants emphasize
that, at all times relevant, Timms was employed by Singley &
Gindele, not Cooper Levenson, thus this case does not present "side
switching." *Id.* Defendants further emphasize that Timms's

offensive comments: (1) occurred after Cooper Levenson withdrew the offer of employment; (2) cannot be imputed to Cooper Levenson, and (3) do not rise to the level that would require reporting the conduct pursuant to Rule 8.1(a).[8] *Id.* at 4-5. Moreover, Defendants argue there is no requirement under the Rules of Professional Conduct that remotely obligated Cooper Levenson to report Timms's conduct to the Hinkers and/or Singley & Gindele. *Id.* at 5.

Plaintiffs responded, again taking offense with Timms's comments regarding the Hinker case and again asserting that Timms was associated with Cooper Levenson the moment he accepted their offer of employment. Plaintiffs' Reply [Dkt. No. 19], at 1-2.

## B.   **Legal Standard**

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *accord In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984). "As a general rule, the exercise is committed to the sound discretion of the district court . . . ." *Miller*, 624 F.2d at 1201.

---

[8] Defendants argue that Timms's comments did not violate the RPCs, as they were merely his personal opinion as to the relative significance of the case—"something attorneys do virtually every day in interactions with adversaries and the Court in the context of settlement discussions and the like." *Id.* at 5.

Motions to disqualify counsel are generally viewed with disfavor. *United States ex rel. Bahsen v. Boston Scientific Neuromodulation Corp.*, 147 F.Supp. 3d 239, 243 (D.N.J. 2015) (*citing Essex Chem. Corp. v. Hartford Accident & Indem. Co.,* 993 F.Supp. 241, 246 (D.N.J. 1998)). Accordingly, the movant seeking to disqualify opposing counsel carries "a heavy burden and must satisfy a high standard of proof." *Essex Chem. Corp.*, 993 F.Supp. at 246. Nonetheless, any doubts as to the allegedly offending counsel's conduct "are to be resolved in favor of disqualification." *Id.* In addition, the Court "must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed," all the while considering the Court's "obligation to preserve high professional standards and the integrity of the proceedings." *Id.* at 254.

## C.  <u>Analysis</u>

In this district, courts look to the New Jersey Rules of Professional Conduct with regard to issues of professional ethics. L. Civ. R. 103.1(a). "When interpreting the RPC, the Court looks to New Jersey's state courts' interpretation of the RPC as primary authority and modifies it when required by federal law." *Delso v. Trustees For Ret. Plan For Hourly Employees of Merck & Co., Inc.*,

No. 04-3009, 2007 WL 766349, at *5 (D.N.J. Mar. 6, 2007). With regard to the pending Motion seeking to disqualify Defendants' counsel Cooper Levenson, Plaintiffs bear the burden of "proving that disqualification is appropriate because the RPC was violated." *Id.* It bears emphasizing again that motions to disqualify are disfavored and are considered a drastic measure, as such, the Court must closely scrutinize the facts to ensure a just result. *See Montgomery Academy v. Kohn*, 50 F. Supp. 2d 344, 349 (D.N.J. 1999). Moreover, disqualification determinations are highly fact-specific, and the Court must approach "such problems with a keen sense of practicality as well as a precise picture of the underlying facts." *Id.* In deciding motions to disqualify, the Court must balance the "sacrosanct" privacy of the attorney-client relationship and the right of a party to proceed with counsel of its choice. *Id.* at 349-350.

In this case, Plaintiffs assert that Cooper Levenson should be disqualified as counsel because the firm's continued representation of Defendants would violate RPC 1.9(b) which provides, in pertinent part:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was **associated** had previously represented a client.

21

> (1) whose interests are materially
> adverse to that person; and
>
> (2) about whom the lawyer, while at the
> former firm, had personally acquired
> information protected by RPC 1.6 and RPC
> 1.9(c) that is material to the matter
> unless the former client gives informed
> consent, confirmed in writing.
>
> Notwithstanding the other provisions of this
> paragraph, neither consent shall be sought
> from the client nor screening pursuant to RPC
> 1.10 permitted in any matter in which the
> attorney had sole primary responsibility for
> the matter in the previous firm.[9]

RPC 1.9(b) (emphasis added). Plaintiffs argue that Timms was associated with Cooper Levenson, making his representation in the matter a violation of RPC 1.9(b), and thus to allow Cooper Levenson to continue to represent Defendants would violate RPC 1.10, which provides in relevant part:

> (a) when lawyers are **associated** in a firm,
> none of them shall knowingly represent a
> client when any one of them practicing alone
> would be prohibited from doing so by RPC 1.7
> or RPC 1.9[.]

RPC 1.10(a) (emphasis added). It follows that before the above-referenced rules can be applied and disqualification considered,

---

[9] Plaintiffs also assert that RPC 1.9(d) is relevant given that Defendants are public entities. The Rule states, "A public entity cannot consent to a representation otherwise prohibited by this Rule." While this Rule would be relevant if Timms was associated with Cooper Levenson, because the Court finds he was not associated, this issue need not be addressed.

Timms had to be associated with Cooper Levenson. Thus, the preliminary issue this Court must consider is whether or not Timms was **associated** with Cooper Levenson.

After thorough research, answering this question presents a unique situation and case of first impression. The typical application of RPC 1.9 and 1.10 involves an attorney who worked at one firm, left, and is then actually working at a second firm. Thus, the typical issue of association is plainly presented because the allegedly conflicted attorney is actively employed by the second firm. Nonetheless, indicia of association include: (1) whether the second firm makes public representations as to an attorney's title and status; and (2) whether the attorney had access to the second firm's clients' confidential information. *Boston Scientific Neuromodulation Corp.*, 147 F.Supp. 3d at 245-47.

With this lens, and after careful consideration, the Court finds that Plaintiffs cannot meet their burden. The record unambiguously establishes that Timms was not associated with Cooper Levenson. First, Cooper Levenson withdrew the offer of employment immediately after it was made when the conflict became known. This occurred *weeks* before Timms's proposed start date with the firm. Accordingly, Timms never had access to Cooper Levenson's

files. Timms did not work for Cooper Levenson subsequent to the offer extended on May 15, 2019. Moreover, nothing in the record demonstrates that Cooper Levenson held Timms out as a Cooper Levenson employee, let alone an attorney practicing at the firm. Thus, Timms did not commence employment at Cooper Levenson and cannot be said to be associated with Cooper Levenson or have "side switched."

In contrast, at all relevant times, Timms was clearly employed at Singley & Gindele.  Singley certifies that Timms gave his notice on June 11, 2019, thus Timms was employed by Singley & Gindele up until that point. Singley also certifies that Timms maintained his representation of the Hinkers at all times relevant, thus it cannot fairly be said that Timms was associated with any firm other than Singley & Gindele. Given that Timms was not associated with Cooper Levenson, RPCs 1.9 and 1.10 do not apply and a conflict cannot be imputed to disqualify Cooper Levenson.

In addition, the Court also rejects Plaintiffs' overbroad definition of "associated" as the *Boston Scientific Neuromodulation Corp.* court demonstrates that guideposts, such as access to a firm's files and the firm's public representations, instruct in defining whether an attorney is associated with a firm.

Similarly, the Court also rejects Plaintiffs' argument that Cooper Levenson should be disqualified for failing to report Timms. Plaintiffs claim Timms violated Rules of Professional Conduct, and Cooper Levenson violated RPC 8.3 by failing to report this to the appropriate authorities. However, Plaintiffs fail to articulate what Rules, if any, Timms violated and why Cooper Levenson should have known Timms's conduct constituted a violation. Because Plaintiffs' argument is speculative and conclusory, their assertions fail to meet the high standards required of a meritorious motion to disqualify counsel. Moreover, as Defendants correctly assert, there is no such rule that required Cooper Levenson to disclose Timms's conduct to the Hinkers or Singley & Gindele as Cooper Levenson did not perceive anything that rose to the level to warrant reporting since the offer of employment was rescinded.

Furthermore, in light of the record presented, the Court is compelled to note that Timms's conduct is particularly disconcerting. Timms's email communications with various members of Cooper Levenson after the offer was withdrawn are replete with misrepresentations and demonstrate a total disregard to his clients, the Hinkers, and his employer, Singley & Gindele. For these reasons, the Court will make the appropriate referrals.

ACCORDINGLY, **IT IS** on this **13th** day of **January, 2020,** hereby

**ORDERED** that Plaintiffs' Motion to Disqualify Cooper Levenson

as Attorneys for Defendants, [Dkt. No. 15], is **DENIED**.


                              s/ Karen M. Williams
                              KAREN M. WILLIAMS
                              United States Magistrate Judge

cc: Hon. Robert B. Kugler, U.S.D.J.